## STATE OF NORTH CAROLINA, through BRUMMITT, Atty. Gen., v. SOUTHERN RY. CO. et al.

Circuit Court of Appeals, Fourth Circuit.
January 14, 1929.

No. 2700.

Dennis G. Brummitt, Atty. Gen., of North Carolina, and Aubrey L. Brooks, of Greensboro, N. C. (Frank Nash, Asst. Atty. Gen. of North ·Carolina, Edward S. Parker, Jr., Julius C. Smith, C. R. Wharton, and Edwin J. Martenet, all of Greensboro, N. C., on the brief), for appellant.

S. R. Prince, of Washington, D. C. (G. H. Hastings, of Winston-Salem, N. C., and L. E. Jeffries, of Washington, D. C., on the brief), for appellees.

Before WADDILL and NORTHCOTT, Circuit Judges, and GRONER, District Judge.

WADDILL, Circuit Judge (after stating the facts as above). The first and second assignments of error will be considered together, inasmuch as they both involve the question of the correctness of the ruling of the trial court in refusing to allow the Attorney General of North Carolina to intervene in behalf of that state in this cause, and to set up herein the several causes for intervention set forth in the bills praying relief in that respect, and in dismissing such bills of intervention upon the final hearing. The court's reasons for not allowing intervention are succinctly set forth in its decree, and the assignments present for our consideration the propriety of its rulings. At the threshold, we have to determine when those in the position of the appellant may intervene and be afforded relief under circumstances such as exist here.

This is a suit in equity, to which petitioner, appellant, sought to be made a party, and the terms and conditions upon which admission may be had are prescribed by the rules governing practice in federal courts of equity. Federal Equity Rule No. 37 prescribes in general terms the conditions under which interveners may be admitted as parties to an equity cause in a federal court. The part of the rule having special application here is as follows:

"Any one claiming an interest in the litigation may at any time be permitted to assert his right by intervention, but the intervention shall be in subordination to, and in recognition of, the propriety of the main proceeding."

This portion of the rule is not of very ancient origin, having been suggested by the bar committee of the Circuit Court of Appeals of the Eighth Circuit, and subsequently adopted in the language quoted as a part of the federal Equity Rules. Hopkins, New Federal Equity Rules, rule 37, p. 212; Consolidated Gas Co. v. Newton (D. C.) 256 F. 238, 244. The rule, however, is of far-reaching importance, as bearing upon the rights of those not parties to the litigation who seek to be admitted therein, with the view of having adjudicated rights alleged by them to be properly assertable in the litigation.

The filing of the bills of intervention was permitted by the trial court, with the understanding that they would be subsequently dismissed, if it later appeared that intervention was improper. The cause was thus heard and considered by the court, with the result that the bills of intervention were dismissed as having been improvidently filed. The equity rule applicable is plain, and in the nature of things, as it relates to the parties to the litigation, should be strictly construed. The bills of intervention were object-

ed to by the parties plaintiff and defendant in the original suit herein, in which intervention was sought, because it was apparent, as alleged, that the same was not intended to be in subordination to, or in recognition of, the propriety of the main proceeding, and sought relief inconsistent with that prayed for therein. No absolute right of intervention is given by the equity rule in question, and no statutory authority therefor exists, and, in the absence of abuse of the discretion reposed in the chancellor, his action should not be disturbed. The authorities amply sustain this position, and hence, under the plain meaning of the rule, in the light of the interpretation placed thereon, the petitions of intervention, allowed by the court to be conditionally filed, as aforesaid, should have been refused, and the petition was therefore properly dismissed.

The Circuit Court of Appeals of the Eighth Circuit, in In re Veach, 4 F.(2d) 334, in considering this question, at page 336, said:

"It is our opinion that Veach cannot be permitted to evade the explicit command of Equity Rule 37. He can be admitted as an intervener in the Adler suit only in recognition of and subject to the requirements of that rule. It says that any one who is permitted to intervene in a suit shall do so in subordination to and in recognition of the propriety of the main proceeding. Counsel frankly admits here that his only purpose is to launch an attack against the propriety of all of the proceedings in the Adler suit, and the petition which he tendered to the clerk shows upon its face that that was his sole purpose. If the clerk had accepted and filed his petition in intervention, it would have been the duty of the District Court to immediately dismiss him out of that case, and it would be an idle proceeding and a vain order to require the clerk to accept and file it."

This court, in the comparatively recent cases of Union Trust Co. of Pittsburgh v. Jones, 16 F.(2d) 236, and Board of Commissioners, etc., v. La Fayette Southside Bank, 27 F.(2d) 286, considered this question. In the first-named case, in which the complainant therein, Jones, suing on behalf of himself and other creditors, secured the appointment of receivers for the defendant corporation, the Union Trust Company of Pittsburgh, an unsecured creditor for a large amount, sought to intervene, which application was refused, and from which ruling the trust company appealed. This court said, at page 239:

"The position of the appellant, Union Trust Company, that upon intervention of the trustees under the mortgage the proceedings should have been dismissed, and that in what was done to the contrary the court was without jurisdiction, is clearly untenable. In any event, appellant itself, an intervener in the same litigation to assert its unsecured indebtedness, was not in a position to make such claim. It could not intervene in and seek the aid of the court and at the same time attack and dispossess the court of its jurisdiction to proceed with the litigation in an orderly way"—citing Equity Rule 37, 198 F. xxviii; 2 Foster's Fed. Pro. 261; Horn v. Pere Marquette R. Co. (C. C.) 151 F. 626, 633; Cauffiel v. Lawrence (D. C.) 256 F. 714; King v. Barr (C. C. A.) 262 F. 56.

In the second-named case, Board of Commissioners v. La Fayette Southside Bank, 27 F.(2d) 286, supra, at page 293, this court said:

"Nothing seems better settled than that an application of an intervener seeking to be admitted as a party to a pending cause is addressed to the sound discretion of the court, and where the application is denied, and such intervener left to avail himself of such rights as the law may afford him in other appropriate ways, that the order denying such application is an interlocutory, and not a final decree, and hence one from which no appeal lies. Authorities to support this position might be cited almost without number, but the following cases from the Supreme Court of the United States will be found to be especially applicable and entirely conclusive of the subject: Connor v. Peugh's Lessee, 18 How. 394, 15 L. Ed. 432; Ex parte Cutting, 94 U. S. 14, 24 L. Ed. 49; Guion v. Liverpool, etc., Ins. Co., 109 U. S. 173, 3 S. Ct. 108, 27 L. Ed. 895; Credits Commutation Co. v. U. S., 177 U. S. 311, 316, 317, 20 S. Ct. 636, 44 L. Ed. 782."

The decision of the Supreme Court of the United States in the last-cited case, Credits Commutation Co. v. U. S., 177 U. S. 311, supra, particularly at pages 316 and 317, 20 S. Ct. 636, 44 L. Ed. 782, gives an interesting review of the law covering the subject under consideration, showing when, and when not, interveners, not parties to the litigation, should be admitted, and the effect of denying them relief, from which it is entirely clear that the decree of the lower court appealed from herein is correct, and that no appeal lies therefrom.

The trial court, in its decretal order, specifically dealt with the matters generally covered by the assignments of error other than assignments Nos. 1 and 2, as follows:

" * * * (3) That neither the bill of intervention nor the supplemental bill of intervention show any such legal interest as entitles the state to intervene herein; (4) that the cases of James S. Manning, Attorney General of North Carolina, v. Southern Railway Company, Atlantic & Yadkin Railway Company, and Atlantic Coast Line Railroad Company, referred to in the bill of intervention and found in 188 N. C. 648, 125 S. E. 555, and State of North Carolina, on relation of Dennis G. Brummitt, Attorney General, v. Southern Railway Company et al., in this federal court, referred to and set up in the supplemental bill of intervention, are severally res adjudicata of this case; (5) that the bill of intervention and supplemental bill of intervention show on their face such gross laches on the part of the state as to, and do, forever estop the intervener from maintaining its bill of intervention; (6) that the intervener has no right to bring his action for a violation of or under the Sherman Anti-Trust Act [15 USCA §§ 1–7, 15] and does not show any such special damage as would entitle the state to sue under the Clayton Act [38 Stat. 730]; (7) that this court has no jurisdiction under the averments of the bill of intervention and supplemental bill of intervention to consider the issue of Southern Railway Company acquiring or consolidating with the Atlantic & Yadkin Railroad, the jurisdiction of that question being by the Transportation Act of 1920 [49 USCA § 71 et seq.] confided primarily to the Interstate Commerce Commission."

These rulings of the court below, thus succinctly stated, generally cover the matters raised by the bills of intervention, and as to which it is not our purpose to express an opinion for the reason that, with the intervention denied and the bills filed for that purpose dismissed, it is neither necessary nor desirable that we should do so. What is said in reference to the specific findings of the court and the assignments of error applies to assignment No. 6 and subdivisions A, B, C, D, E, F, and G thereof. As to the matters especially thus embraced, they relate largely to mere details, which would, perhaps, have been of importance, had the court allowed the intervention to be had and granted the relief asked for therein, but which, in the present state of the record, require no consideration.

The decree of the lower court, denying intervention and dismissing the petitions, is plainly right, and is affirmed, at the costs of the appellant.

Affirmed.

GRONER, District Judge (concurring). I concur in the result, though not upon the ground that the petition for intervention is not in subordination to and in recognition of the main proceeding. I think it is. Nor am I willing, because the right of intervention is ordinarily one of discretion, to rest it alone upon the rule of nonappealability in such cases. In this case, the petitioner is a sovereign state, and as such is entitled, I think, to have the right to intervention considered in this court. In addition to all of this, the questions involved are important and of longstanding, and have been fully and ably discussed in the briefs and in the oral argument. Their final determination is sought by both sides.

The avowed object of appellant in seeking to intervene was to afford the state the opportunity of protecting its claimed interests in the ultimate disposition of the Atlantic & Yadkin Railroad, to enable it to place itself in position to oppose confirmation to the Southern Railway if that company should be the high bidder at the sale, which in the orderly course of the proceeding, will presently be directed by the court, and also to have the District Court inquire into the validity of the so-called dismemberment of the Cape Fear & Yadkin Valley Railroad which happened more than 25 years ago.

I agree with the District Court that the state has failed to show it has such an interest in the subject-matter as would authorize the granting of its petition. I am also of opinion that, since the decision of the Supreme Court of North Carolina in the case of Manning v. A. & Y. Railroad Co., 188 N. C. 648, 125 S. E. 555, every question in relation to the legality of the sale of the railroad of the Cape Fear & Yadkin Valley and its physical division between the Atlantic Coast Line and the Southern Railway is foreclosed and determined. I think it clear, also, that whatever interest the state may have as parens patriæ in behalf of its citizens has not been challenged by anything in the proceeding to the present.

Whether, when the decree selling the road has been passed and executed, and the court is called on to accept or reject the offer to buy, a situation may not arise in which it would be entirely proper to allow the state, as a matter of right, to intervene and show cause against confirmation to the particular buyer, because the control and ownership by such buyer would violate the laws of North Carolina, presents an entirely different question, but its determination in the present state of the case would be premature. If, and when,

the event occurs which the state of North Carolina anticipates and seeks to avoid, the District Court, I have no doubt, even if convinced that the right to intervene, if prayed, should be again denied, will nevertheless avail itself of the assistance of the state, as the friend of the court, to the end that its decree may not prejudice any right or violate any statute of the state.